UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JOSHUA JORDAN,**

    **Plaintiff,**

**v.**                                             Case No: 8:25-cv-1800-MSS-CPT

**BOB HENRIQUEZ,** *in his official capacity as Hillsborough County Property Appraiser*,

    **Defendant.**

**ORDER**

    **THIS CAUSE** comes before the Court for consideration of Defendant Hillsborough County Property Appraiser's Opposed Motion to Dismiss Verified Second Amended Complaint, (Dkt. 47), and Plaintiff's response thereto. (Dkt. 51) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendant's Motion.

    **I.    BACKGROUND**

    This case arises from a dispute over whether certain real property located at 3306 S. Omar Ave. Tampa, FL 33629 (the "Property") is entitled to an exemption from ad valorem taxation because it is used for a religious purpose. See Fla. Stat. § 196.196. Plaintiff Joshua Jordan is the Executive Director and Senior Pastor of Faith Action Church, Inc. (the "Church"). (Dkt. 44 at ¶ 33) Plaintiff incorporated the Church as a Florida not-for-profit corporation on April 17, 2024. (Dkt. 44-13 at 12–

13) On April 18, 2024, Royce Ann Joyce Jordan, Plaintiff's spouse, created the Faith Action Church Parsonage Trust (the "Trust") and granted the Property to the Trust. (Dkts. 44-2; 44-13 at 25) Ms. Jordan is the Trustee of the Trust, while Plaintiff and his progeny are the beneficiaries of the Trust. The Church is not a beneficiary of the Trust. The Property is designated as a parsonage in the Trust documents. (Dkt. 44-2)

On October 6, 2024, the state of Florida issued a Consumer's Certificate of Exemption, which provides that the Church is "exempt from the payment of Florida sales and use tax on real property rented, transient rental property rented, tangible personal property purchased or rented, or services purchased." (Dkt. 44-3) The Certificate categorized the Church's exemption category as "Religious-Physical Place." (Id.)

The Church also submitted an application for the Property to be exempt from ad valorem taxes because it is used for a religious purpose.[1] (Id. at ¶ 66) On April 11, 2025, Henry McCloud, Manager of the Exemption Compliance Department in the Hillsborough County Property Appraiser's Office, informed Plaintiff that his application was being denied because (1) he did not currently reside at the Property, and (2) the Property was generating rental income. (Id. at ¶ 67) Plaintiff then advised Mr. McCloud that all rental income was going back to the Church and being used for exempt purposes and therefore it should not be considered profit making. (Id. at ¶¶ 67–

---

[1] The Church was listed as the "applicant name" on the application, and the application was signed by Plaintiff as "Senior Pastor" and Royce Jordan as "trustee/director." (Dkt. 44-13 at 7–9)

2

72; Dkt. 44-4) See Fla. Stat. § 196.196(4) (stating that property claimed as exempt for religious purposes which is used for profitmaking purposes shall be subject to ad valorem taxation, but "[u]se of property for functions not requiring a business or occupational license conducted by the organization at its primary residence, the revenue of which is used for wholly exempt purposes, shall not be considered profit making.").

On June 27, 2025, Defendant Bob Henriquez, in his official capacity as Hillsborough County Property Appraiser, denied Plaintiff's request for the exemption. (Dkt. 44-5) The letter and notice of denial ("Denial Letter") stated that the application was denied because (1) applicant was not the owner of record on January 1 or had a proportional interest to the real estate, (2) lacked evidence of religious activity or services, and (3) the applicant did not meet the statutory criteria for a charitable or nonprofit entity. (Id.) Plaintiff challenges these reasons. First, Plaintiff asserts that the Trust owned the Property on January 1.[2] Plaintiff then notes that Defendant's office never requested any documentation of religious activity or services. Among others, Plaintiff points to online services, physical services in the Church's Tokyo, Japan location, and charitable support as examples of the Church's religious activity. (Dkt. 44 at ¶ 97) The Denial Letter advised Plaintiff that appeals could be made to the Value

---

[2] From Defendant's perspective, the issue is that the Church is listed as the applicant on the exemption application, and the Church did not own the Property (the Trust did). (Dkt. 44-13 at 2–3) Plaintiff alleges that the Trust is an "integrated auxiliary" of the Church and thus shares in the Church's "exempt religious status." (Dkt. 44 at ¶ 44)

3

Adjustment Board within 30 days. (Dkt. 44-5) Because the constitutional issues involved, however, Plaintiff opted to seek a resolution in federal court.

After receiving the Denial Letter, Plaintiff submitted a public records request to Defendant's office seeking data on its denials of religious exemption applications since Defendant took office in 2013. (Dkt. 44 at ¶ 132) Plaintiff alleges that these records demonstrate a "clear pattern of unconstitutional religious determinations by Defendant's office," because they often indicate more denials than applications. (Id. at ¶ 134) For example, in 2024, Defendant issued 31 denial letters despite receiving only 10 applications. (Id.) Plaintiff also discovered that Defendant did not retain records from 2013–2018, despite the requirement for property appraisers to maintain such records for 10 years.[3] (Id. at ¶¶136–37)

From here, Plaintiff also alleges that, "[u]pon information and belief, Defendant has engaged in a pattern and practice of intentional misconduct and discriminatory application of religious exemption standards, applying lenient review standards and favorable presumptions to Catholic religious organizations while subjecting Protestant religious groups to heightened scrutiny, fabricated denial reasons, and discriminatory treatment." (Dkt. 44 at ¶ 116) After further attempts to resolve the exemption denial, Plaintiff initiated this action. Plaintiff asserts that he is not seeking any tax-related relief. Instead, Plaintiff challenges Defendant's "unlawful practice of imposing unlawful religious sufficiency tests on churches seeking tax exemption." (Id. at ¶ 10)

---

[3] Plaintiff raises various related challenges to Defendant's internal operations, including the delegation of religious exemption denials to others in his office.

4

The Second Amended Complaint brings eighteen claims against Defendant: (1) Violation of Florida Statutes Chapter 196; (2) Procedural Due Process Violations; (3) Violation of Article I, Section 3 of the Florida Constitution; (4) Violation of the Florida Religious Freedom Restoration Act; (5) Violation of the Free Exercise Clause of the First Amendment; (6) Violation of the Establishment Clause of the First Amendment; (7) Violation of the Equal Protection Clause of the Fourteenth Amendment; (8) Violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (9) Fraudulent Misrepresentation; (10) Gross Negligence; (11) Fraudulent Misrepresentation; (12) Gross Negligence; (13) Procedural Due Process Violations; (14) Due Process Violations; (15) Fraud and Misrepresentation; (16) Conspiracy to Violate Civil Rights pursuant to 42 U.S.C. § 1985; (17) Unjust Enrichment; and (18) Municipal Liability – Monell Claim. (Dkt. 44)

Defendant moves to dismiss the Second Amended Complaint, arguing that the Court lacks subject matter jurisdiction over the dispute because of the Tax Injunction Act, the comity doctrine, and because Plaintiff lacks standing. For the reasons explained below, the Court **GRANTS** Defendant's motion.[4]

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously [e]nsure that jurisdiction exists over a case[.]" Smith v. GTE Corp., 236 F.3d

---

[4] Because the Court finds that Plaintiff's claims are barred under the Tax Injunction Act and that abstention is warranted under the comity doctrine, it does not address Plaintiff's standing.

5

1292, 1299 (11th Cir. 2001). Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). If the challenge is facial, the court merely evaluates whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion. McElmurray v. Consol. Gov. of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007).

### III. DISCUSSION

#### a. Tax Injunction Act

Defendant argues that the Second Amended Complaint is due to be dismissed for lack of subject matter jurisdiction pursuant to the Tax Injunction Act. The Tax Injunction Act states: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "The Tax Injunction Act is a 'jurisdictional rule' and constitutes a 'broad jurisdictional barrier.'" I.L. v. Alabama, 739 F.3d 1273, 1282 (11th Cir. 2014) (quoting Moe v. Confederated Salish & Kootenai Tribes of Flathead Rsrv., 425 U.S. 463, 470 (1976)). The Act "restricts the power of federal district courts to prevent collection or enforcement of state taxes." Arkansas v. Farm Credit Servs. of Cent. Ark., 520 U.S. 821, 823 (1997). Even when "important constitutional rights are at issue," district courts lack jurisdiction to review disputes which concern taxes under state law if an adequate state remedy exists. Miami Herald Publ'g Co. v. City of Hallandale, 734 F.2d 666, 672–73

(11th Cir. 1984) (citing California v. Grace Brethren Church, 457 U.S. 393 (1983)) ("Nor is the jurisdictional bar to challenging state tax laws in federal courts avoided when suit is brought under 42 U.S.C. § 1983."). "The burden is on the plaintiff to allege facts sufficient to overcome the TIA's jurisdictional bar." Capel v. Pasco Cnty., No. 24-12793, 2025 WL 1409399, at *1 (11th Cir. May 15, 2025).[5]

The Tax Injunction Act bars federal jurisdiction if: "(1) the relief requested by the plaintiff will 'enjoin, suspend, or restrain' a state tax assessment and (2) the state affords the plaintiff a 'plain, speedy and efficient remedy[.]'" Williams v. City of Dothan, 745 F.2d 1406, 1411 (11th Cir. 1984). The Eleventh Circuit has held that Florida law provides plaintiffs a "plain, speedy, and efficient remedy." Osceola v. Fla. Dep't of Revenue, 893 F.2d 1231, 1233 (11th Cir. 1990).

Plaintiff states that "no state tax remedy can adequately address" Defendant's "ultra vires religious determinations that violate the First Amendment" because "such determinations exceed all statutory authority and involve First Amendment rights the Constitution forbids government from evaluating." (Dkt. 51 at 17) Plaintiff cites no authority for the proposition that he cannot raise constitutional claims in Florida state courts. This is because there is no limitation on his ability to bring his claims in state court. See, e.g., Crocker v. Pleasant, 778 So. 2d 978, 982 n.6 (Fla. 2001) ("A claim under section 1983 may be brough in state court.") (citing Maine v. Thiboutot, 488

---

[5] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

U.S. 1, 10–11 (1980)); see also Barfield v. Cnty. of Palm Beach, Off. of Prop. Appraiser, No. 10-cv-80980, 2011 WL 1458003, at *4 (S.D. Fla. Apr. 15, 2011) ("The Florida state courts will protect Plaintiff's constitutional rights since Florida '[s]tate courts, like federal courts, have a constitutional obligation to safeguard personal liberties and uphold federal law.'") (quoting California v. Grace Brethren Church, 457 U.S. 393, 417 n.37 (1982)); Carson v. City of Fort Lauderdale, 293 F.2d 337, 339 (5th Cir. 1961) ("[T]he Constitution of the United States is as applicable to and controlling upon state courts as it is federal courts. So in this case plaintiffs do not lose any constitutional rights by being forced to first try their issues in a state court instead of a federal court.").[6] Thus, the Court holds that Florida provides a plain, speedy, and efficient remedy.

Plaintiff argues that the Act is nonetheless inapplicable because the determination of whether real property is entitled to a religious exemption does not qualify as an "assessment." In support of this argument, Plaintiff relies on the distinction between "assessment" and "information gathering" discussed in Direct Mktg. Ass'n v. Brohl, 575 U.S. 1, 8–9 (2015). In Brohl, a trade association of direct-to-consumer retailers sued the Director of Colorado's Department of Revenue, seeking to enjoin the state's imposition of sales and use tax-related "notice and reporting requirements" on out of state retailers. Id. at 5–6. Colorado required retailers that did

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

8

not collect Colorado sales and use tax to notify their Colorado customers of the customer's duty to file a sales tax return and provide those customers with annual reports detailing their purchases. The retailers were also required to send an annual report to the state "listing the names of their Colorado customers, their known addresses, and the total amount each Colorado customer paid for Colorado purchases in the prior calendar year." Id. The purpose of this reporting was to facilitate Colorado's collection of sales taxes from the retailers' customers.

In determining whether the Tax Injunction Act barred the plaintiff's claims, the Brohl Court looked to the Federal Tax Code, which treated "information gathering as a phase of tax administration procedure that occurs before assessment, levy, or collection." Id. at 8. "This step includes private reporting of information used to determine tax liability." Id. The Court further explained that "assessment," the next step in the process, "refers to the official recording of a taxpayer's liability, which occurs after information relevant to the calculation of that liability is reported to the taxing authority." Id. at 9. The Court then stated that it "might also be understood more broadly to encompass the process by which that amount is calculated." Id. The Court then held that the Tax Injunction Act did not bar the plaintiff's suit because the "TIA is keyed to the acts of assessment, levy, and collection themselves, and enforcement of the notice and reporting requirements is none of these." Id. at 12.[7]

---

[7] The Court took no position on whether the suit might nevertheless be barred under the comity doctrine. Id. at 15.

Relying on this precedent, Plaintiff characterizes his suit as a challenge to Defendant's "pre-assessment screening process," and not a challenge to the "assessment, levy, or collection" of taxes. The Court disagrees. First, the Court notes that the Brohl Court was discussing information gathering and assessment in the context of sales and use tax, which is procedurally distinct from property taxes. In Hibbs v. Winn, the Supreme Court explained that "[t]he term 'assessment' is used in a variety of ways in tax law. In the property-tax setting, the word usually refers to the process by which the taxing authority assigns a taxable value to real or personal property." 524 U.S. 88, 100 n.3 (2004).[8] The determination of whether an exemption applies is a part of the assessment process. See Turner v. Jordan, 117 F.4th 1289, 1296 (11th Cir. 2024) ("A property appraiser assesses property value, adjusts those values by approving or rejecting exemptions, and certifies this information on the tax roll.") (citing Fla. Stat. §§ 193 *et seq.*); see also Nikolitis v. Ballinger, 736 So. 2d 1253, 1255 (Fla. 4th DCA 1999) (stating it is "clear" that the application of a homestead exemption is an "integral part" of a "tax assessment").

Indeed, Florida state courts have consistently held that challenges to the determination of whether real property is entitled to an exemption are subject to the requirements of Fla. Stat. § 194.171, which requires actions "contest[ing] a tax assessment" to be brought within 60 days after the contested assessment is certified.

---

[8] The Brohl Court cited the Hibbs Court's footnote in support of the idea that "assessment" may be "understood more broadly to encompass the process by which [the tax] amount is calculated." 575 U.S. at 9.

See, e.g., Ward v. Brown, 894 So. 2d 811, 815 (Fla. 2004) ("We conclude that the petitioners' argument that 'classification' challenges resulting in the denial of a tax exemption are entitled to a four-year statute of limitations period while other claims are not, would be contrary to the spirit of the tax assessment statutes[.]"); Nikolitis v. Hanna, 92 So. 3d 299, 301 (Fla. 4th DCA 2012) ("[I]t is well established that a challenge concerning entitlement to a tax exemption **is** a challenge to an assessment of taxes, for purposes of section 194.171.") (emphasis in original).

Finally, even if "assessment" in these circumstances were limited to the "official recording of taxpayer liability" as Plaintiff argues, Plaintiff's requested relief would nevertheless enjoin, suspend, or restrain the assessment of taxes. Plaintiff asks the Court to prevent Defendant from denying any applications for religious exemptions. Considering that, as a property appraiser, Defendant "assesses property value, adjusts those values by approving or rejecting exemptions, and certifies this information on the tax roll," Plaintiff's request for relief would prevent Defendant from both adjusting the assessed property value and certifying the information on the tax roll. Turner, 117 F.4th at 1296.

Indeed, while not binding authority, federal courts across the country have consistently held—after the Brohl decision—that challenges to exemption determinations in property tax matters are barred by the Tax Injunction Act. See, e.g., Marvin v. Allen, No. 23-cv-5947, 2024 WL 4290722, at *5 (S.D.N.Y. Sept. 24, 2024) ("[S]uits seeking property-tax exemptions . . . are requests to restrain the 'assessment, levy[,] or collection' of a 'tax.' By asking the Court to grant a STAR exemption,

11

Plaintiff effectively asks the Court 'to determine that [Plaintiff] does not owe property taxes the [County] has determined are due and owing.'"); Baker ex rel. S.B. v. Burghart, No. 5:25-cv-4110, 2024 WL 2783791, at *3 (D. Kan. May 30, 2024) (suit in which plaintiffs sought "court order that would have the practical effect of allowing [them], along with an immeasurable score of others, to claim this tax exemption" would lower the amount of revenue the state could collect and thus fell "in the traditional heartland of TIA cases"); Stark v. Town of Rumford, No. 2:20-cv-66, 2020 WL 6785935, at *4 (D. Me. Nov. 18, 2020) ("I lack jurisdiction to adjudicate claims based on the Town's imposition or assessment of property tax, including the Town's alleged failure to grant the Plaintiffs an exemption based on their religious status."); Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd., 258 F. Supp. 3d 405, 414 (S.D.N.Y. 2017) ("[T]o the extent plaintiffs argue their claim is not 'related to the collection of state taxes,' but rather is based on the revocation of tax exempt status, the Court fails to see how this distinction matters. In either situation, the claim is that defendants administered the state tax system in a discriminatory way and therefore violated plaintiffs' constitutional rights. Comity and the Tax Injunction Act plainly bar the Court from adjudicating such a claim."); see also Barfield, 2011 WL 1458003, at *2–3 (stating that Plaintiffs' claims challenging denial of exemption from ad valorem taxes and "seeking an order compelling the Palm Beach Appraiser's Office to institute comprehensive changes to its tax assessment procedure," were barred by the Tax Injunction Act because "although stated as a Section 1983 action, [the case was] a

challenge to Defendants' exercise of their statutory duties in assessing the Plaintiffs' property").

### b. Comity

Even if the Tax Injunction Act did not preclude jurisdiction in this case, Plaintiff's claims are due to be dismissed on comity grounds. The comity doctrine is a doctrine of abstention that reflects the "belief that the National Government will fare best if the States and their institutions are left free to perform their functions in separate ways." Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 112 (1981). The doctrine applies in state taxation cases, preventing "federal courts from entertaining claims for relief that risk disrupting state tax administration." Levin v. Commerce Energy, Inc., 560 U.S. 413, 417 (2010). The doctrine is to be construed broadly in state taxation cases. Turner, 117 F.4th at 1301. Taxpayers alleging their federal rights have been violated by state or local tax practices must seek relief through state remedies, so long as those remedies are "plain, adequate, and complete." Fair Assessment, 454 U.S. at 116.

To survive dismissal under the comity doctrine, it is the plaintiff's burden to establish that state court remedies are not "plain, adequate, and complete." Turner, 117 F.4th at 1305. "A state court remedy meets these minimal *procedural* criteria only when it provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." Id. (quotations omitted) (emphasis in original). The Eleventh Circuit has held that Florida law provides "plain, adequate, and complete state remedies." See, e.g., Capel, 2025 WL 1409399, at *2.

13

Because "there is 'no significant difference' between the Tax Injunction Act's 'plain, speedy and efficient' state remedy and the comity doctrine's 'plain, adequate, and complete' state remedy," Plaintiff's challenges to the adequacy of Florida's procedures fail for the same reasons already discussed. Turner, 117 F.4th at 1304 n.19 (citing Fair Assessment, 454 U.S. at 116 n.8).

Plaintiff primarily argues that the Supreme Court has narrowed the scope of the comity doctrine, which is now no broader than the Tax Injunction Act and is inapplicable because he does not seek to prevent tax collection. In support of this argument, Plaintiff relies on Hibbs, in which the Supreme Court noted in a footnote that it has "relied upon 'principles of comity' . . . to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection." 542 U.S. at 107 n.9. In Levin, however, the Supreme Court reaffirmed that the "comity doctrine is more embracive than the TIA." 560 U.S. at 424. The Court then expressly clarified that the Hibbs footnote did not restrict the doctrine's applicability. Id. at 430 (stating that it "did not deploy the footnote to recast the comity doctrine"). Thus, Plaintiff is incorrect. See also Turner, 117 F.4th at 1301 (noting that "both the Supreme Court and our Court have confirmed that the comity doctrine is to be construed broadly in state taxation cases").

Based on principles of comity, abstention is warranted. To award Plaintiff relief, the Court would have to decide that Defendant's procedures for determining whether property is entitled to a religious exemption violate the Constitution. This would conflict with the principle that "the federal courts should generally avoid interfering

14

with the sensitive and peculiarly local concerns surrounding state taxation schemes." Colonial Pipeline Co. v. Collins, 921 F.2d 1237, 1242 (11th Cir. 1991) (citation omitted); see Turner v. Baldwin, No. 3:18-cv-1275, 2019 WL 5423389, at *5 (M.D. Fla. Oct. 23, 2019) (finding abstention appropriate where "the Court would have to decide that [the defendants'] administration of procedures for applying and removing the homestead tax exemption and for effectuating the tax sale violated [the plaintiff's] constitutional rights"); Legion of Christ, Inc. v. Town of Mount Pleasant, No. 18-cv-11246, 2020 WL 4288072, at *7 (S.D.N.Y. July 27, 2020) (stating that "a ruling passing judgment on the constitutionality" of the Town's "repeated denials of Plaintiff's tax exemption applications" is "precisely the kind of determination that would 'disrupt' New York State's tax administration, rendering it barred by the principle of comity"); Islamic Cmty. Ctr., 258 F. Supp. 3d at 414 (holding that comity plainly bars the court from adjudicating claim that defendants administered the state tax system in a discriminatory way and therefore violated plaintiffs' constitutional rights).

### c. RLUIPA

In his response to the Motion to Dismiss, Plaintiff argues that RLUIPA provides an independent federal cause of action (and resulting basis for this Court's jurisdiction). But the RLUIPA claim faces the same issues as the other claims in the Second Amended Complaint – it is barred by the Tax Injunction Act and the comity doctrine. Even if it were not, however, Plaintiff's claim would fail. RLUIPA provides, in relevant part, that "[n]o government shall impose or implement *a land use regulation*

in a manner that imposes a substantial burden on the religious exercise of a person[.]" 42 U.S.C. § 2000cc(a)(1). The denial of a property tax exemption is not a land use regulation. See 42 U.S.C. § 2000cc-5(5) (defining "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land"); Sandstrom v. Wendell, No. 1:23-cv-405, 2024 WL 1242415, at *8 (W.D.N.Y. Mar. 22, 2024) (plaintiff's RLUIPA claim failed to plausibly state a claim upon which relief may be granted where the complaint failed to "identify any restriction that actually limits his ability to practice his religion at the properties unrelated to the properties' tax status").

### d. Shotgun Pleading

Finally, the Court notes that the Second Amended Complaint is independently due to be dismissed because it is an impermissible shotgun pleading. "Shotgun pleadings violate Rule 8, which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' by fail[ing] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1294–95 (11th Cir. 2018). The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings": (i) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (ii) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (iii) a complaint that fails to "separat[e] into a different count each cause of action or claim for relief"; and (iv) a complaint that "assert[s] multiple claims

against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322-23 (11th Cir. 2015). Even though Plaintiff is proceeding *pro se* (that is, without a lawyer) he must still comply with these minimum pleading standards. See, e.g., Archer v. City of Winter Haven, No. 8:16-CV-3067-T-36AAS, 2017 WL 11319170, at *1 (M.D. Fla. Dec. 8, 2017) (dismissing *pro se* complaint as an impermissible shotgun pleading).

The Second Amended Complaint is a shotgun pleading because it falls into the first two categories described above. First, the Second Amended Complaint contains multiple counts where each count adopts the allegations of all preceding counts. In addition, the Second Amended Complaint is replete with conclusory, vague, immaterial facts not connected to any particular cause of action. Plaintiff's manner of pleading is improper because he includes a litany of legal conclusions and argument unrelated to any particular claim for relief. This has resulted in an 82-page complaint containing 397 paragraphs. See Trump v. NY Times Co., --- F. Supp. 3d ---, No. 8:25-cv-2487-SDM-NHA, 2025 WL 2680597, at *2 (M.D. Fla. Sept. 19, 2025) (stating that "a complaint remains an improper and impermissible place" for the "protracted recitation and explanation of legal authority putatively supporting the pleader's claim for relief"); Whitley v. Nassau Cnty. Sheriff's Off., No. 3:25-cv-441-MMH-MCR, 2025 WL 1294993, at *3 (M.D. Fla. May 5, 2025) ("Cluttering a complaint with pages of citations to legal authority is more confusing than clarifying, as both the Court and the defendant are left to sort through the complaint to identify the factual allegations.");

17

Arrington v. Green, 757 F. App'x 796, 797–98 (11th Cir. 2018) (holding that a district court did not abuse its discretion in dismissing a complaint containing "scattered legal arguments, legal standards, legal conclusions, and even (incomplete) citations to legal authorities").

## IV. CONCLUSION

Upon consideration, it is hereby **ORDERED**:

1. Defendant Hillsborough County Property Appraiser's Opposed Motion to Dismiss Verified Second Amended Complaint, (Dkt. 47), is **GRANTED**.

2. The Second Amended Complaint, (Dkt. 44), is **DISMISSED**.

3. The Clerk is directed to **TERMINATE** any pending motions and **CLOSE** the case.

**DONE** and **ORDERED** in Tampa, Florida, this 5th day of January 2026.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Any Unrepresented Party